Filed 3/24/22  P. v. Dapont CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACKSON ARION DAPONT,<br><br>    Defendant and Appellant. | H047903<br>(Santa Cruz County<br>Super. Ct. Nos. 18CR02602,<br>18CR00859) |

Appellant Jackson Arion Dapont pleaded no contest in two criminal cases to burglary (Pen. Code, § 459) and unlawful access card activity (Pen. Code, § 484i, subd. (c)) and was sentenced to a stipulated aggregate term of six years in prison.  Upon notification by the California Department of Corrections and Rehabilitation (CDCR) of several errors in the imposition of the stipulated sentence, the trial court resentenced Dapont—in his absence and without his consent—to a differently structured six-year term, during which he would be definitively ineligible for early parole consideration under Proposition 57, the Public Safety and Rehabilitation Act of 2016.  Because we are unable to conclude beyond a reasonable doubt that Dapont was not prejudiced by the

denial of his constitutional right to be present, we reverse and remand the matter for a new resentencing hearing.[1]

## I. BACKGROUND

A. *The Offenses*[2]

On February 1, 2018, Dapont was found at a motel with a credit-card embosser and magnet-strip modifier.

On May 1, 2018, Dapont burgled a garage that was attached to a residence and took a blanket, a dog bed, a white pillow, and a foam pad.

B. *The Complaints and the Plea*

On February 14, 2018, the Santa Cruz County District Attorney's Office filed a complaint charging Dapont in case number 18CR00859 with unlawful access card activity (Pen. Code, § 484i, subd. (c)). The complaint alleged that Dapont had served a prior prison term (*id.*, § 667.5) and had a prior strike conviction (*id.*, § 667, subd. (b)-(i)).

On May 2, 2018, the Santa Cruz County District Attorney's Office filed another complaint charging Dapont in case number 18CR02602 with first degree burglary (Pen. Code, § 459) and misdemeanor false representation of identity to a police officer (*id.*, § 148.9, subd. (a)). As to the burglary charge, the complaint specifically alleged that the offense was committed by Dapont and his codefendant "who did enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by [the victims] with the intent to commit larceny and any felony." The complaint also alleged that the burglary was "a violent felony within the meaning of Penal Code [section]

---

[1] Dapont has filed a petition for writ of habeas corpus that this court ordered to be considered with this appeal. We have disposed of the habeas petition by separate order filed this day. (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

[2] We derive our factual summary of the offenses from the factual bases of Dapont's pleas.

667.5[, subd.] (c) in that another person, other than an accomplice, was present in the residence during the commission of the . . . offense." The complaint also alleged that Dapont had served a prior prison term (*id.*, § 667.5), had a prior strike conviction (*id.*, § 667, subd. (b)-(i)), and committed the burglary while he was either released on bail or on his own recognizance (*id.*, § 12022.1).

On May 31, 2018, in case number 18CR00859, Dapont pleaded no contest to unlawful access card activity (Pen. Code, § 484, subd. (c)); in case number 18CR02602, he pleaded no contest to first degree burglary "as charged" (*id.*, § 459) and also admitted the on-bail enhancement (*id.*, § 12022.1) and a prior strike conviction (*id.*, § 667, subd. (b)-(i)). The parties stipulated to a sentence of six years but without an agreement as to a particular means of achieving the six-year term.

C. *The Sentencing Hearing*

On March 28, 2019, the trial court sentenced Dapont to the stipulated term of six years in prison. In case number 18CR02602, the trial court sentenced Dapont to two years for burglary (Pen. Code, § 459), doubled to four years due to his prior strike (*id.*, § 667, subd. (e)(1)), and an additional two years for the on-bail enhancement (*id.*, § 12022.1, subd. (b)). The trial court also sentenced Dapont to a concurrent term of two years in case number 18CR00859 for unlawful access card activity (*id.*, § 484i, subd. (c)). The trial court credited Dapont with 332 days of actual custody and 332 days of conduct credit under Penal Code section 4019.

D. *The Letter from the CDCR*

On November 22, 2019, the CDCR's Division of Adult Institutions notified the trial court of several sentencing errors in the abstract of judgment. The complaint in case number 18CR02602 alleged that the burglary was a violent offense within the meaning of Penal Code section 667.5, subdivision (c), but it was unclear from the minute order or the abstract of judgment whether the allegation was found true. The CDCR noted that the

box to designate that an offense was a "Violent Felony" on the abstract of judgment was not checked. Additionally, the complaint in case number 18CR02602 alleged that Dapont was on bail in case number 18CR00859 when he committed the offense. Accordingly, Dapont's admission of this allegation required that his sentences for burglary and unlawful access card activity run consecutively, not concurrently. (Pen. Code, § 12022.1, subd. (e).)

E. *The Resentencing Hearing*

On January 3, 2020, the trial court held a hearing to correct the unauthorized sentence. Dapont was not present. The prosecutor and defense counsel informed the trial court that they had agreed to an aggravated term of six years on the burglary count, with the People dismissing both the on-bail enhancement and the strike allegation, with a concurrent two-year term for the unlawful access card activity. The prosecutor added that for the burglary conviction, "it needs to be clarified that it's person present so it's a violent strike."

Subsequently, the trial court imposed the agreed-upon sentence as follows: "So we're going to . . . amend the abstract. So I'm on 18CR02602 declaring Count I to be the princip[al] term. We're going to by stipulation order Mr. Dapont to serve 6 years with the Department of Corrections and Rehabilitation. [¶] And then the aggravated terms, I'll make a finding that there was a person present making this a violent felony. The out on bail enhancement . . . and the strike are all stricken . . . . [¶] . . . [¶] And in the one ending in 859 in that case order him to serve 2 years in the Department of Corrections and Rehabilitation concurrent with the previous case." As for presentence custody credits, the trial court confirmed Dapont's 332 days of actual custody as of March 28, 2019, the date of the original sentencing hearing, but reduced his conduct credits from 332 to 49 days by operation of Penal Code section 2933.1, given the determination that the burglary was a violent felony.

4

## II. ANALYSIS

The parties agree that the trial court violated Dapont's constitutional right to be personally present at a critical stage of his criminal proceedings when it resentenced him in absentia without his written waiver. They disagree as to whether the error was prejudicial and the standard by which prejudice is to be assessed.

**A.** *Applicable Legal Principles and Standard of Review*

A criminal defendant's right to be personally present at trial is " ' "guaranteed under the federal Constitution by the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment." ' " (*People v. Suarez* (2020) 10 Cal.5th 116, 145.) Due process further " ' "guarantees the [criminal defendant] the right to be present at any 'stage that is critical to [the] outcome' and where the defendant's 'presence would contribute to the fairness of the procedure.' " ' " (*Id.* at p. 146.) Sentencing is considered a critical stage of a criminal proceeding, and resentencing is also generally considered another critical stage.[3] (See *People v. Cutting* (2019) 42 Cal.App.5th 344, 347-348 (*Cutting*); *People v. Simms* (2018) 23 Cal.App.5th 987, 996 (*Simms*).)

Violation of a defendant's constitutional right to be personally present at a critical stage of a criminal proceeding is evaluated under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Davis* (2005) 36 Cal.4th 510, 532 (*Davis*).) Under *Chapman*, we must reverse "unless the People can demonstrate that the error was harmless beyond a reasonable doubt." (*People v. Reese* (2017) 2 Cal.5th 660, 671.) "To determine whether the People have carried their burden, we examine the entire

---

[3] A defendant may, however, waive his right to be present at sentencing. (Pen. Code, §§ 1193, 977.)

5

record and must reverse if there is a ' " 'reasonable probability' " ' that the error contributed" to the outcome.  (*Ibid.*)

**B.** *Analysis*

The People appropriately concede that the trial court violated Dapont's constitutional right to be present for a critical stage of the proceedings by resentencing him in absentia and without a written waiver of his right to be present.  At the hearing, the trial court did not merely correct clerical errors in the abstract of judgment but restructured Dapont's entire sentence and exercised its discretion to impose the upper term of six years on the burglary charge, which it further determined was a violent felony based on the allegation that a person other than an accomplice was present.[4]  (See *Cutting*, *supra*, 42 Cal.App.5th at pp. 347-348; *Simms*, *supra*, 23 Cal.App.5th at p. 996.)  Consequently, we must reverse the judgment unless the People meet their burden of proving an absence of prejudice.  (*Davis*, *supra*, 36 Cal.4th 510 at p. 532.)[5]  The critical question, therefore, is whether the People can demonstrate beyond a reasonable doubt that the sentence actually imposed in Dapont's absence left him in no worse a position than any alternative Dapont might otherwise legitimately have sought.

Dapont contends that his absence prevented him from seeking a sentencing structure by which he could be eligible for early parole consideration under Proposition

---

[4] Dapont makes no argument that his presence at the hearing would have impacted the trial court's finding that the burglary was a violent felony.

[5] Arguing that it is Dapont who must demonstrate prejudice, the Attorney General appears to conflate Dapont's statutory rights under Penal Code sections 977 and 1043 with his federal constitutional right to be present for a critical stage of the proceeding. (Compare *People v. Mendoza* (2016) 62 Cal.4th 856, 902 [applying *People v. Watson* (1956) 46 Cal.2d 818, 836 to violation of statutory right] with *Davis*, *supra*, 36 Cal.4th 510 at p. 532 [applying *Chapman* standard where proceeding in absentia implicates federal constitutional right].)

6

57, which amended the California Constitution to provide that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term of his or her primary offense." (Cal. Const., art. I, § 32, subd. (a)(1).)[6] "[T]he full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence." (Art. I, § 32(a)(1)(A).)[7] Accordingly, the extension of the term imposed for Dapont's burglary offense from four to six years left him ineligible for parole consideration under article I, section 32(a)(1)'s plain language. Conversely, because the stated terms of the parties' plea bargain did not specify the mechanism by which the stipulated term of six years would be achieved, Dapont posits that, if present, he could have requested a two-year term for the violent offense of burglary with a person present, a two-year term for the nonviolent offense of unlawful access card activity, and a two-year term for the on-bail enhancement.[8] Under

---

[6] An express purpose of the initiative was to forestall a federal mandate for an indiscriminate release of prisoners, given the state's continuing difficulty complying with a 2009 federal court order that it "reduce the prison population to 137.5% of the adult institution's total design capacity.' " (*In re Gadlin* (2020) 10 Cal.5th 915, 922-923.)

[7] We use "article I, section 32(a)," "article I, section 32(a)(1)," and "article I, section 32(a)(1)(A)," to refer to subdivisions (a), (a)(1), and (a)(1)(A), respectively, of article I, section 32 of the California Constitution.

[8] Penal Code section 1170.1, subdivision (a) typically limits "[t]he subordinate term for each consecutive offense" to "one-third of the middle term of imprisonment" otherwise prescribed for each such offense. (Pen. Code, § 1170.1, subd. (a).) But as Dapont notes, a defendant may waive the benefit of such statutory protections. (See, e.g., *People v. Jones* (1989) 210 Cal.App.3d 124, 133-134 [waiver of Pen. Code, § 1170.1, subd. (a)'s protection against "double use" of a prior serious felony conviction]; *People v. Otterstein* (1987) 189 Cal.App.3d 1548 [waiver of Pen. Code, § 12022.7, subd. (g)'s prohibition against application of enhancement where infliction of great bodily injury is an element of underlying offense]; *People v. Johnson* (1978) 82 Cal.App.3d 183 [waiver of Pen. Code, § 2900.5's requirement that all days of custody be credited to sentence].) Accordingly, we are unable to conclude that Dapont's preferred sentencing structure

the plain terms of article I, section 32(a), Dapont's proposed sentencing structure would appear to make him eligible for early parole after service of approximately a third of his six-year aggregate sentence.

Article I, section 32(a), however, further directs the CDCR to "adopt regulations in furtherance of these provisions" and "certify that these regulations protect and enhance public safety." (Art. I, § 32(b).) To implement article I, section 32(a), the CDCR has adopted regulations that exclude from early parole eligibility those inmates, among others, who are "currently serving a term of incarceration for a 'violent felony.' " (Cal. Code Regs., tit. 15, § 3490, subd. (a)(5) (section 3490(a)(5)).) The application of section 3490(a)(5) to "mixed-offense" inmates—those serving an aggregate sentence comprising consecutive terms for both violent and nonviolent offenses—is the subject of ongoing litigation. The California Supreme Court has recently ordered the transfer of multiple matters to the intermediate courts of appeal, with directions to vacate their prior opinions interpreting section 3490(a)(5) and reconsider the causes in light of *In re Mohammad* (2022) 12 Cal.5th 518. (See *In re Douglas*, review granted Aug. 25, 2021, S268570, transferred Mar. 9, 2022, with directions; *In re Ontiveros*, review granted Aug. 25, 2021, S269832, transferred Mar. 9, 2022, with directions; *In re Viehmeyer*, review granted June 30, 2021, 268660, transferred Mar. 9, 2022, with directions; *In re Guice*, review granted Sept. 29, 2021, S270524, transferred Mar. 9, 2022, with directions.) Under any interpretation of section 3490(a)(5), the trial court's imposition of a six-year term for burglary as a violent offense foreclosed consideration for early parole: at no point in the six-year term would Dapont cease to be serving his principal term or a term of incarceration for a violent offense.

would have been unavailable on resentencing, had he been present to waive the benefit intended by Penal Code section 1170.1, subdivision (a)'s prohibition against full-term consecutive sentences.

Arguing that his proposed sentencing structure would preserve his eligibility for early parole consideration under article I, section 32(a), Dapont in his opening brief had relied on *In re Mohammad* (2019) 42 Cal.App.5th 719, in which the Second District Court of Appeal held that section 3490(a)(5), despite its "intuitive appeal," conflicted with the plain language of article I, section 32(a) and was therefore invalid. (*In re Mohammad*, *supra*, at p. 727.) The California Supreme Court recently reversed the judgment of the intermediate court of appeal, holding that the CDCR acted within its authority when it promulgated this regulation. (*In re Mohammad* (2022) 12 Cal.5th 518, 524-525.) But the petitioner in *Mohammad* had not contested the CDCR's determination that he was currently serving a term of incarceration for a violent felony: although he had completed service of his three-year principal term, most of what remained of his 29-year sentence was attributable to nine consecutively sentenced counts of robbery. (*In re Mohammad*, *supra*, 42 Cal.App.5th at pp. 723-724.) Citing the petitioner's concession, the high court declined to address at what point, if any, a " 'mixed-offense prisoner' " would become eligible for early parole consideration. (*Mohammad*, *supra*, 12 Cal.5th at p. 541, fn. 13 ["express[ing] no view" on whether article I, section 32 requires us to break an inmate's sentence into its component parts].) Accordingly, "[l]urking beneath [the court's] holding . . . are a number of questions concerning what it means for an inmate with both violent and nonviolent felony convictions to be 'currently serving a term of incarceration for a "violent felony." ' " (*Id.* at p. 542 (conc. opn. of Liu, J.).)

The People assert—without citation to authority—that Dapont's violent felony conviction will bar early parole consideration regardless of how the trial court aggregates his six-year sentence. We presume that the Attorney General relies on *In re Reeves* (2005) 35 Cal.4th 765 (*Reeves*), a decision predating Proposition 57, in which the high court had reaffirmed that Penal Code section 2933.1, which limits an inmate's ability to earn worktime credits if convicted of a violent offense, applied to the entirety of an

9

inmate's aggregate sentence: "multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' [citation] that merges all terms to be served consecutively . . . . For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally 'is convicted of a [violent] felony offense.' " (*Id.* at pp. 772-773.)

Analogizing *Reeves*, Dapont's proposed sentencing structure would indeed be unavailing, because at every point in the aggregate six-year term, irrespective of how the component principal and subordinate terms might be characterized, he would be deemed to be serving a term of incarceration for a violent felony. As Justice Liu observed in *Mohammad*, however, the language of Proposition 57's post-*Reeves* definition of a primary offense "seems to '*require*[] us to break an inmate's sentence into its component parts,' notwithstanding the merger rule, in order to determine what term the inmate is currently serving at the time he or she seeks early parole consideration. [Citation.]" (*Mohammad*, *supra*, 12 Cal.5th at p. 543 (conc. opn. of Liu, J.), italics added.)

Ultimately, we need not determine whether a mixed-offense inmate will, at some point, be eligible for early parole consideration while serving consecutive sentences. Dapont's appeal turns on whether the People have met their burden of demonstrating that Dapont's absence from the hearing was harmless beyond a reasonable doubt. (*Davis*, *supra*, 36 Cal.4th 510, 532.) In light of the continuing regulatory uncertainty as to what it means to be "currently serving a term of incarceration for a 'violent felony' " (section 3490(a)(5)) and how the regulation should apply to mixed-offense inmates, we conclude that the People have not met their burden. (See *Davis*, *supra*, 36 Cal.4th at p. 532; *Chapman v. California*, *supra*, 386 U.S. 18.)

The People alternatively contend that Dapont's failure at his original sentencing to object to the trial court's imposition of a four-year term for his burglary offense signifies that he would likewise have made no objection to the six-year aggravated term for that

10

offense had he been present for resentencing.  But because it is the People who bear the burden of demonstrating harmlessness, we are unable to presume that Dapont was subjectively as aware at his original sentencing hearing as he is now of the potential application of Proposition 57.  Nor are we entitled to presume that Dapont's failure to object to his sentence at the first sentencing hearing, which included a four-year term for his burglary conviction, foreclosed the possibility that he would have objected to the imposition of the aggravated term for his burglary offense at the resentencing hearing.  To conclude otherwise would equate Dapont's apparent acceptance of parole eligibility four years into a six-year sentence with a wholesale waiver of parole eligibility at any time during those six years.  Nor may we presume that Dapont appreciated at his original sentencing hearing that his burglary plea would be treated by the CDCR as disqualifying him from early parole consideration.  Where, as here, the People bear the burden of demonstrating harmlessness beyond a reasonable doubt, we may not impute to Dapont a greater sensitivity to the legal character of the burglary offense than was exhibited by the lawyers or the sentencing judge.[9]

Accordingly, we reverse and remand the matter for a new resentencing hearing at which Dapont may either be present or waive his right to be present.  (See *Cutting*, *supra*, 42 Cal.App.5th at p. 350; Pen. Code, §§ 977, 1093.)  Given this disposition, we need not reach Dapont's claim that he was denied the effective assistance of counsel or his claim, raised for the first time in his supplemental brief, to retroactive application of Senate Bill

_____

[9] At the original plea and sentencing hearings, the parties and the trial court alike treated the burglary count as a nonviolent offense.  The abstract of judgment failed to characterize it as violent.  The prosecutor's stated factual basis omitted the fact— essential to the characterization of the offense as violent—of another person's presence at the time of the entry.  And neither counsel questioned the trial court's calculation of conduct credits under Penal Code section 4019 without limitation by Penal Code section 2933.1.

11

No. 567.  At resentencing, Dapont may raise the issue of the applicability of Senate Bill No. 567 in the first instance before the trial court.

## III. DISPOSITION

The judgment is reversed and remanded for a new resentencing hearing at which Dapont is either present or has executed a written waiver of his right to be present.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

DANNER, J.

*People v. Dapont*
**H047903**